1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | TELEFLEX MEDICAL
INCORPORATED,

12

Plaintiff,

13 | vs.

14 | NATIONAL UNION FIRE
INSURANCE COMPANY OF
15 | PITTSBURGH, PA,

16 | Defendant.

CASE NO. 11cv1282-WQH-DHB

ORDER

17 HAYES, Judge:

18      The matter before the Court is Defendant National Union's Motion for a New

19 Trial and/or for Judgment to be Entered in its Favor ("Motion for New Trial and/or

20 Judgment"). (ECF No. 169).

21 **I.      Background**

22      On June 10, 2011, Plaintiff LMA[1] initiated this action by filing a Complaint in

23 this Court against Defendant National Union Fire Insurance Company of Pittsburgh, PA

24 ("National Union"). (ECF No. 1). In connection with Defendant's refusal pay $3.75

25 million toward the settlement of an underlying litigation pursuant to an umbrella

26

27      [1]   The Plaintiff named in the Complaint is LMA North America, Inc.   On
28 February 4, 2014, the Court granted Plaintiff's unopposed motion to substitute Teleflex
Medical Incorporated as Plaintiff. (ECF No. 159). For consistency, the Plaintiff will
be referred to as "LMA" or "Plaintiff" in this Order.

insurance policy, Plaintiff asserted two claims for relief: (1) breach of contract, and (2) breach of the implied covenant of good faith and fair dealing ("bad faith claim"). Plaintiff sought punitive damages as to the bad faith claim, and demanded a jury trial.

On February 15, 2013, the Court issued an Order denying Defendant's Motion for Summary Judgment. (ECF No. 37).

On November 14, 2013 through November 21, 2013, a jury trial was conducted as to Plaintiff's two claims. (ECF Nos. 114, 115, 124, 136, 138). On November 20, 2013, Defendant filed a Motion for Judgment as a Matter of Law Re: All Contractual Issues, and a Motion for Judgment as a Matter of Law Re: Bad Faith and Punitive Damages. (ECF Nos. 127, 128). During trial, the Court took the motions under submission. (ECF No. 136).

On November 22, 2013, the jury unanimously found in favor of Plaintiff on its breach of contract claim and bad faith claim. (ECF No. 140). The jury further found that there was not clear and convincing evidence that Defendant engaged in conduct with malice or oppression.

On December 2, 2013, Plaintiff filed a Motion for Entry of Final Judgment, accompanied by exhibits. (ECF No. 145).

On March 28, 2014, after receiving briefing from the parties, the Court issued an Order denying Defendant's Motions for Judgment as a Matter of Law, and granting in part and denying in part Plaintiff's Motion for Entry of Final Judgment. (ECF No. 162).

On April 7, 2014, the Court entered Final Judgment on behalf of Plaintiff and against Defendant for the sum of $3,750,000, together with fees and costs of $1,216,580.99, and prejudgment interest of $1,113,987.44, for a total of $6,080,568.43. (ECF No. 164). The Court awarded post-judgment interest pursuant to 28 U.S.C. § 1961, and retained jurisdiction for the limited purpose of considering any future request for fees and/or costs pursuant to *Brandt v. Superior Court*, 37 Cal. 3d 813, 817 (1985).

On May 5, 2014, Defendant filed the Motion for New Trial and/or Judgment.

(ECF No. 169).  On May 23, 2014, Plaintiff filed an opposition.  (ECF No. 171).  On June 5, 2014, Defendant filed a reply.  (ECF No. 175).

## II.     Motion for Judgment as a Matter of Law

### A.     Standard of Review

Federal Rule of Civil Procedure 50 provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may ... resolve the issue against the party; and ... grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1); *see also id*. 50(b) ("No later than 28 days after the entry of judgment ... the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.  In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law.").  "Judgment as a matter of law is appropriate when the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, which is contrary to the jury's verdict.  Conversely, if there is such relevant evidence as reasonable minds might accept as adequate to support the jury's conclusion," a motion for judgment as a matter of law must be denied.  *Hagen v. City of Eugene*, 736 F.3d 1251, 1256 (9th Cir. 2013) (quotations omitted).

### B.     Contractual Issues

Defendant moves for judgment as a matter of law as to "all contractual issues." (ECF No. 169 at 10).  Defendant contends that the Court erred in its application of *Diamond Heights Homeowners Association v. National American Insurance Co.*, 227 Cal. App. 3d 563 (1991) to this case.  Defendant contends that *Diamond Heights* is distinguishable from the facts of this case and "inconsistent with California Supreme Court authority."  *Id*. at 14.  Defendant contends that, even if *Diamond Heights* applies, the jury's verdict is not supported by the evidence because there "was no evidence of a reasonable risk to LMA," "National Union was given less than 24 hours to agree to

the Ambu-LMA settlement," and National Union "specifically advised LMA of its intent to reserve rights." *Id*. at 15.

Plaintiff contends that the motion should be denied because "*Diamond Heights* has never been overruled and the facts of *Diamond Heights* are directly on point." (ECF No. 171 at 9). Plaintiff contends that it is not relevant whether there was evidence of "a reasonable risk to LMA," and even if it is relevant, there was evidence that Ambu was demanding $28 million, an amount in excess of policy limits. *Id*. at 14. Plaintiff contends that there was ample evidence that National Union had sufficient time to undertake the defense and that the settlement was reasonable.

For the reasons discussed in the Court's February 15, 2013 Order denying the Motion for Summary Judgment, the Court finds the rationale and holding of *Diamond Heights* and *Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal. App. 4th 958 (2006) apply to this case. *See* ECF No. 37. Viewing the evidence presented at trial in the light most favorable to Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, the Court finds that "there [was] such relevant evidence as reasonable minds might accept as adequate to support the jury's conclusion" that Plaintiff was entitled to prevail on its claim for breach of contract. *Hagen*, 736 F.3d at 1256 (quotation omitted). The motion for judgment as a matter of law regarding the contractual issues is denied.

## C.   Bad Faith and Punitive Damages

Defendant moves for judgment as a matter of law with respect to Plaintiff's bad faith claim and request for punitive damages. Defendant contends that "when an insurer is obligated to pay under a policy based upon waiver or estoppel—not based on a breach of a policy term—bad faith and punitive damages cannot lie." (ECF No. 169 at 16 (citing *Calfarm Ins. Co. v. Krusiewicz*, 131 Cal. App. 4th 273, 285-86 (2005)). Defendant contends that the evidence as to whether National Union acted in bad faith or unreasonably "is overwhelmingly in National Union's favor." *Id*. Defendant contends that "[e]ven if the settlement itself was deemed to be reasonable—which

1  National Union denies—it certainly cannot be said that National Union acted
2  unreasonably in deciding to proceed to trial, when the chance of a defense verdict in
3  favor of LMA was a 'coin toss,' ... and there was no reasonable risk of a verdict in
4  excess of policy limits." *Id*. at 18.  Defendant contends that "[t]here is ... a complete
5  absence of evidence that could support an award of punitive damages by clear and
6  convincing evidence." *Id*. at 19.

7          Plaintiff contends that "LMA's bad faith claim was grounded in breach of
8  contract—which the jury found," and *Calfarm* "simply has no bearing on the instant
9  case." (ECF No. 171 at 15).  Plaintiff contends that the evidence supported the jury's
10 verdict in its favor on the bad faith claim because the evidence showed:

11         National Union refused to meaningfully participate in the defense,
           mediation, and settlement process, despite LMA's continuous attempts to
12         engage it and to provide it with relevant information.  National Union
           failed to undertake a meaningful analysis of the claims and refused to
13         attend the mediation. Following the contingent settlement, National Union
           dragged its heels for months, forcing LMA to jump through hoops, only
14         at the end of the day to deny perfunctorily any approval.

15 *Id*. at 18.  Plaintiff contends that there was sufficient evidence to send the issue of
16 punitive damages to the jury, and, since the jury did not award punitive damages, the
17 issue is moot.

18         Unlike in *Calfarm* (which did not involve a claim for breach of contract), the jury
19 found against National Union as to the claim for breach of contract, based upon the
20 "good faith principles as between an excess insurer and its insured." *Fuller-Austin*, 135
21 Cal. App. 4th at 986.  For the reasons discussed in the Court's February 15, 2013 Order
22 denying the Motion for Summary Judgment, the Court finds that the rationale in
23 *Calfarm* relied upon by Defendant does not apply to this case.  *See* ECF No. 37 at 23-
24 24.  The parties list evidence that supports the parties' respective positions as to whether
25 National Union's conduct was unreasonable under California law.  (ECF No. 169 at 17-
26 18 (Defendant); ECF No. 171 at 16-18 (Plaintiff)).  In deciding a motion for judgment
27 as a matter of law, "[w]hile the court must review the entire evidentiary record, it must
28 disregard all evidence favorable to the moving party that the jury is not required to

believe." *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007). Viewing the evidence in the light most favorable to Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, the Court finds that "there [was] such relevant evidence as reasonable minds might accept as adequate to support the jury's conclusion" that Plaintiff was entitled to prevail on its claim for bad faith. *Hagen*, 736 F.3d at 1256 (quotation omitted). The motion for judgment as a matter of law as to the bad faith claim is denied. The jury did not find in Plaintiff's favor with respect to Plaintiff's request for punitive damages. (ECF No. 140). Accordingly, the motion for judgment as a matter of law as to the request for punitive damages is denied as moot.

## III.   Motion for New Trial

Defendant contends that it is entitled to a new trial for three reasons: (1) the Court's "failure to properly instruct the jury resulted in substantial prejudice to National Union"; (2) "the Court erred in allowing improper testimony at trial"; and (3) Plaintiff engaged in "improper closing argument." (ECF No. 169 at 19, 29, 34).

### A.   Standard of Review

Federal Rule of Civil Procedure 59 permits the Court to alter or amend a judgment, or order a new trial. *See* Fed. R. Civ. P. 59(a), (e). "Rule 59 does not specify the grounds on which a motion for a new trial may be granted." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quotation omitted). The ground on which such motions have been granted include "claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Id.* (quotation omitted). "[T]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000). "Upon the Rule 59 motion of the party against whom a verdict has been returned, the district court has the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious

1   opinion, the verdict is contrary to the clear weight of the evidence." *Molski*, 481 F.3d

2   at 729 (quotation omitted).  With respect to evidentiary rulings, "[a] new trial is only

3   warranted when an erroneous evidentiary ruling substantially prejudiced a party."

4   *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008) (quotation omitted).

5   **B.    Jury Instructions**

6   Defendant contends that the Court committed prejudicial error by giving Final

7   Jury Instruction Numbers 17-18 (related to the claim for breach of contract) because

8   there was not a sufficient evidentiary foundation to support giving the instructions and

9   the burden of proof should have been stated as clear and convincing evidence instead

10  of preponderance of the evidence.  (ECF No. 169 at 20-22).  Defendant contends that

11  the Court committed prejudicial error by rejecting Defendant's ten proposed

12  instructions related to the genuine dispute doctrine.  *Id*. at 23-26.  Defendant contends

13  that the Court committed prejudicial error by rejecting Defendant's other proposed

14  instructions regarding reasonableness of the settlement, negligence, mistake, consent

15  to settlement and unclean hands.  *Id*. at 22-23, 26-28.  Defendant contends that the

16  Court committed prejudicial error by giving Final Jury Instruction Number 25 (related

17  to punitive damages) because there was insufficient evidence to warrant giving the

18  instruction.  *Id*. at 28-29.

19  Plaintiff contends that Defendant waived any right to assert that LMA must prove

20  the *Diamond Heights* breach of contract elements by clear and convincing evidence.

21  (ECF No. 171 at 20-22).  Plaintiff contends that the Court properly instructed the jury

22  and/or gave instructions that subsumed Defendant's proposed instructions. *Id*. at 22-28.

23  "[J]ury instructions must fairly and adequately cover the issues presented, must

24  correctly state the law, and must not be misleading." *Servs. Employees Int'l Union v.*

25  *Nat'l Union of Healthcare Workers*, 718 F.3d 1036, 1047 (9th Cir. 2013) (quotation

26  omitted).  "A party is entitled to an instruction on its theory of the case only if it is

27  supported by law and has foundation in the evidence." *Id*.  "[I]f the error in the jury

28  instruction is harmless, it does not warrant reversal." *Hunter v. Cnty. of Sacramento*,

652 F.3d 1225, 1232 (9th Cir. 2011) (quotation omitted).  Under Federal Rule of Civil Procedure 51, "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection."  Fed. R. Civ. P. 51(c)(1).  "If a party does not properly object to jury instructions before the district court, [a court] may only consider 'a plain error in the instructions that ... affects substantial rights.'"  *Hunter*, 652 F.3d at 1230 (quoting Fed. R. Civ. P. 51(d)(2)).

### 1.    Breach of Contract Instructions

In the Final Jury Instructions, the Court gave five instructions, numbers 16-20, specifically addressing LMA's claim for breach of contract.  *See* ECF No. 143 at 17-22.  These instructions included the elements discussed in *Diamond Heights*, and instruction numbers 17 and 18 stated that the burden of proof was preponderance of the evidence.  *Id.* at 18-20.  At the final instruction conference on the morning of November 21, 2013, the Court presented the Final Jury Instructions to the parties, and the Court specifically asked if either party objected to instruction numbers 17 and 18.  The lawyers for both parties stated that they had no objection to either instruction.  (Trial Tr. at 831-32, ECF No. 149).  Prior to the final instruction conference, Defendant filed 65 proposed jury instructions, none of which stated that Plaintiff had the burden of proving anything other than punitive damages by clear and convincing evidence.  Defendant first argued that Plaintiff had the burden of proving the *Diamond Heights* factors by clear and convincing evidence after the Court raised the issue sua sponte after the close of evidence.  Under the facts of this case, the Court finds that Defendant did not properly object to the jury instructions regarding the burden of proof.  *Cf. Medtronic, Inc. v. White*, 526 F.3d 487, 495 (9th Cir. 2008) (holding that "a limited exception" to Federal Rule of Civil Procedure 51(c)(1) exists "when (1) throughout the trial the party argued the disputed matter with the court, (2) it is clear from the record that the court knew the party's grounds for disagreement with the instruction, and (3) the party offered an alternative instruction") (quotation omitted).

Even if Defendant had properly objected, the rule in *Diamond Heights* arose in a different context and is based on different legal principles than waiver cases such as *Waller v. Truck Insurance Exchange, Inc.*, 11 Cal. 4th 1, 31 (1995). The clear and convincing proof standard discussed in *Waller* is inapplicable and inappropriate for this case, and Defendant has failed to demonstrate that the Court erred in instructing the jury that the Plaintiff had the burden of proving the breach of contract cause of action by a preponderance of the evidence. Even if the Court erred in instructing the jury as to the burden of proof, the Court finds that the error would have been harmless given the overwhelming evidence supporting each element of the claim, including that the amount of the settlement was reasonable and that National Union was afforded a reasonable amount of time to make a decision to accept the settlement or reject the settlement and assume the defense. The Court further finds that there was a sufficient evidentiary foundation to support giving each of the instructions related to the breach of contract claim. To the extent Defendant moves for a new trial based upon the Court's breach of contract instructions, the motion is denied.

### 2.   Instructions Regarding Reasonableness of the Settlement

Defendant contends that the Court committed prejudicial error by not giving Defendant's proposed instruction regarding the reasonableness of the settlement.[2] (ECF

---

[2] Defendant's proposed instruction stated:

In considering whether a settlement is reasonable, you must consider the following factors:

1.      A rough approximation of what the plaintiff would actually recover and the defendant's proportionate liability if the case were to proceed to trial;

2.      The amounts paid in settlement;

3.      The allocation of settlement proceeds among plaintiffs;

4.      A recognition that a settlor should pay less in settlement than he would if he were found liable after a trial;

5.      The financial condition of the settling defendants and insurance policy limits of settling defendants;

No. 68 at 3).  Instead, the Court gave Final Jury Instruction Number 19.[3]  (ECF No. 143 at 21).  The Court finds that instruction number 19 accurately stated the factors the jury should have considered as to the reasonableness of the settlement, based upon the governing precedent.  *See Johansen v. Cal. State Auto. Assn. Inter-Ins. Bureau*, 15 Cal. 3d 9, 16 (1975) ("[T]he only permissible consideration in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer"); *Diamond Heights*, 227 Cal. App. 3d at 580 ("[T]he excess insurer, in evaluating the reasonableness of a settlement negotiated by the primary insurer, must consider whether the settlement bears a reasonable relation to the potential for liability and maximum likely recovery if the case proceeds to trial, and, in addition, the costs of defense and burdens imposed upon all parties if the litigation continues.").  Defendant's proposed alternative instruction was either subsumed by the Court's Final Jury Instruction Number 19, or contained factors which were irrelevant to the evidence presented in this case.  For example, Defendant's proposed instruction asked the Court to instruct the jury to consider "[t]he allocation of settlement proceeds among

---

6.   The existence of collusion, fraud, or tortious conduct aimed to injure the interests others, including LMA's insurer; [sic]

The evaluation of whether the settlement was reasonable must be made on the basis of information available at the time of settlement.  A defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be.

In determining whether the settlement was reasonable or unreasonable, you should not consider the possibility that, in the future, if the case did not settle, an insurer would then incur defense costs, including attorneys' fees.  Your inquiry must focus on the value of the claim and other factors enumerated above.

(ECF No. 68 at 3).

[3]  Final Jury Instruction Number 19 states:  "When considering whether the settlement was reasonable, you must consider whether the settlement bears a reasonable relation to the potential for liability and maximum likely recovery if the case proceeded to trial.  The evaluation of whether the settlement was reasonable must be made on the basis of information available at the time of settlement."  (ECF No. 143 at 21).

1  plaintiffs." (ECF No. 68 at 3).  This case has only one plaintiff, and giving Defendant's

2  proposed instruction would have been confusing to the jury.  To the extent Defendant

3  moves for a new trial based upon the Court not giving Defendant's proposed

4  reasonableness instruction, the motion is denied.

### 3.     Instructions Regarding the Genuine Dispute Doctrine

6        Defendant contends that the Court committed prejudicial error by not giving

7  Defendant's ten proposed instructions regarding the genuine dispute doctrine.  In

8  support, Defendant relies upon *Chateau Chamberay Homeowners' Association v.*

9  *Associated International Insurance Co.*, 90 Cal. App. 4th 335, 347 (2001) ("[W]here

10  there is a genuine issue as to the insurer's liability under the policy for the claim

11  asserted by the insured, there can be no bad faith liability imposed on the insurer for

12  advancing its side of that dispute.").  *See* ECF No. 169 at 23-26.  "*Chateau Chamberay*

13  ... addressed the genuine dispute doctrine in the context of [a] motion[] for summary

14  judgment.... *Chateau Chamberay* ..., which [did not] involve[] a jury trial, thus do[es]

15  not constitute authority for a jury instruction on the genuine dispute doctrine." *McCoy*

16  *v. Progressive W. Ins. Co.*, 171 Cal. App. 4th 785, 793 (2009) (citation omitted).  The

17  Court finds that, to the extent the genuine dispute doctrine is applicable in this case at

18  all, the doctrine was adequately subsumed by the Court's Final Jury Instruction

19  Numbers 22 and 23, which were based upon CACI instructions and which were not

20  objected to by either party.[4]  *See id*. at 794 ("[T]he trial court properly instructed the

---

22        [4]  Final Jury Instruction Number 22 states:

23        In every insurance policy there is an implied obligation of good
24  faith and fair dealing that neither the insurance company nor the insured
     will do anything to injure the right of the other party to receive the benefits
     of the agreement.

25

26        To fulfill its implied obligation of good faith and fair dealing, an
     insurance company must give at least as much consideration to the
     interests of the insured as it gives to its own interests.

27

28        To breach the implied obligation of good faith and fair dealing, an
     insurance company must, unreasonably or without proper cause, act or fail
     to act in a manner that deprives the insured of the benefits of the policy.

jury on the issue of reasonableness pursuant to [the] CACI [instructions].  Both parties agreed that these instructions be given.  No further instruction in this regard [as to the genuine dispute doctrine] was necessary."); *see also Howard v. Am. Nat'l Fire Ins. Co.*, 187 Cal. App. 4th 498, 530 (2010) ("*Chateau*'s genuine dispute rule does not apply in all bad faith insurance contexts.  In first party cases, where payment is sought for the insured's direct losses, an insurer may raise a reasonable dispute over coverage without being guilty of bad faith.  But it has never been held that an insurer in a third party case may rely on a genuine dispute over coverage to refuse settlement.  Instead, it is a long-standing rule that the only permissible consideration in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer.") (quotation omitted).  To the extent Defendant moves for a new trial based upon the Court not giving Defendant's genuine dispute

_____

> It is not a mere failure to exercise reasonable care.  However, it is not necessary for the insurer to intend to deprive the insured of the benefits of the policy.

(ECF No. 143 at 24).  Final Jury Instruction Number 23 states:

> LMA claims National Union breached the obligation of good faith and fair dealing by failing to pay benefits due to LMA under the insurance policy.  To establish this claim, LMA must prove all of the following elements by a preponderance of the evidence:
>
> 1.  That National Union breached its contractual obligation to pay benefits under the insurance policy;
>
> 2.  That National Union unreasonably or without proper cause failed to pay policy benefits;
>
> 3.  That LMA was harmed; and
>
> 4.  That National Union's failure to pay insurance policy benefits was a substantial factor in causing LMA harm.
>
> In determining whether National Union acted unreasonably or without proper cause, you should consider only the information that National Union knew or reasonably should have known at the time when it failed to pay benefits.

*Id*. at 25.

1  instructions, the motion is denied.

2  **4.   Consent to Settlement**

3  Defendant contends that the Court committed prejudicial error by not giving

4  Defendant's proposed instruction entitled, "Consent to Settlement."[5]   The Court finds

5  that this instruction is unduly argumentative and/or adequately subsumed by the Court's

6  Final Jury Instruction Numbers 22 and 23.[6]   *See United States v. Sarno*, 73 F.3d 1470,

7  1485 (9th Cir. 1995) (affirming the district court's denial of certain requested

8  instructions because "the requested instructions were either unduly argumentative or

9  unnecessary because they were adequately subsumed by the instructions given to the

10  jury").  To the extent Defendant moves for a new trial based upon the Court not giving

11  Defendant's "Consent to Settlement" instruction, the motion is denied.

12  **5.   Negligence, Mistake, Bad Judgment and Unclean Hands**

13  Defendant contends that the Court committed prejudicial error by not giving

14  Defendant's proposed instructions regarding negligence, mistake, bad judgment and

15  unclean hands.  At the November 20, 2013, jury instructions conference, the Court

16  _____

17  [5]  Defendant's proposed "Consent to Settlement" instruction stated:

18  When considering whether to consent to the settlement proposed LMA
    [sic], the duty of good faith and fair dealing required National Union to
19  give equal consideration to the interests of LMA as to its own.  However,
    National Union was not required to put LMA's interests above its own.
20  It would be proper for National Union to consider whether LMA had valid
    defenses to the Ambu counter claims whether a jury would look less
21  favorably on Ambu's counter claim in light of Ambu's infringement on
    LMA's patent, whether sufficient policy limits remained such that
22  rejecting the settlement could not expose LMA to liability over its policy
    limits, the evaluations provided by LMA's counsel both before and after
23  LMA agreed to the settlement with Ambu, whether CNA would have an
    ongoing defense obligation in addition to the defense that might be
24  provided by National Union, whether further litigation of the case might
    achieve a more favorable settlement result, whether the case could be won
25  at trial, whether the expert for Ambu could have been effectively cross
    examined by counsel for LMA, whether the AMBU damage claim could
26  have been substantially reduced and any other factors relevant to whether
    to settle the case or continue to litigate it.
27

28  (ECF No. 68 at 11).

    [6]  *See* footnote 4, *supra*.

- 13 -

reviewed all of the Court's instructions, and asked the parties if there were any other instructions they were requesting that were not included in the Court's instructions. (Trial Tr., ECF No. 151 at 69-70).   Defendant responded with a request that its "Consent to Settlement" and genuine dispute doctrine instructions be given.  *Id*. at 70, 73.  Defendant did not request that any other instructions be given, and when the Court asked "Anything else?" twice more near the conclusion of the conference, Defendant remained silent.  *Id*. at 81.   The Court finds that Defendant waived these proposed instructions, and Defendant has not alleged that omission of these instructions was plain error that affected Defendant's substantial rights.

Defendant contends that its "proposed [negligence/mistake/bad judgment] instructions clarified that negligence, delay, and poor judgment do not meet [the bad faith] standard."  (ECF No. 169 at 27).  The Court's Final Jury Instruction Number 22 states that "[bad faith] is not a mere failure to exercise reasonable care."  (ECF No. 143 at 24).  Even if Defendant had not waived them, the Court finds that the Defendant's negligence/mistake/bad judgment instructions were adequately subsumed by the Court's Final Jury Instruction Number 22.[7]

Even if the unclean hands instruction had not been waived, Defendant's sole reference to unclean hands during trial was on November 21, 2013, when defense counsel argued that collusion "has been an issue in the case the entire time," and "[c]ollusion is a form of unclean hands.  That is the eighth affirmative defense [in the Answer]."  (Trial  Tr. at 827, ECF No. 149).  Defendant has pointed to no evidence to support any form of unclean hands defense other than collusion.  The Court instructed the jury on collusion, at Defendant's request and over Plaintiff's objection.  *See* Final Jury Instruction Nos. 18, 20; ECF No. 143 at 19-20, 22.

To the extent Defendant moves for a new trial based upon the Court not giving Defendant's proposed instructions regarding negligence, mistake, bad judgment and unclean hands, the motion is denied.

---

[7]  *See* footnote 4, *supra*.

### 6. Punitive Damages

Defendant contends that the Court committed prejudicial error by giving Final Jury Instruction Number 25 (related to punitive damages) because there was insufficient evidence to warrant giving the instruction. In its reply brief, Defendant contends that "merely instructing the jury that it could consider awarding punitive damages planted the seed in the jury's mind that National Union was guilty of oppression, fraud or malice." (ECF No. 175 at 11).

The jury did not award punitive damages. The jury's verdict indicates that the jury found that Defendant breached the contract and acted in bad faith, but did not act with malice or oppression. This finding is supported by substantial evidence. The Court instructed the jury that "[y]ou must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be." (Final Jury Instruction No. 1, ECF No. 143). The Court presumes that the jury followed the instructions. *See, e.g.*, *Bains LLC v. Arco Prods. Co., Div. of Atl. Richfield Co.*, 405 F.3d 764, 771 & n.12 (9th Cir. 2005). To the extent Defendant moves for a new trial based upon the Court giving an instruction on punitive damages, the motion is denied.

### C. Testimony at Trial

Defendant contends that the Court allowed "improper testimony" from Lawrence Pretty and Michael Warford; Plaintiff's counsel engaged in improper questioning of Louis Manger and Stephen Marzen; and the testimony of Bernard Feldman was "disrupted and distracted by lengthy sidebars." (ECF No. 169 at 29-34).

### 1. Lawrence Pretty

Defendant contends that the Court erred in denying Defendant's motion in limine to exclude or limit the testimony of Plaintiff's expert witness, Lawrence Pretty, because Pretty "accepted the conclusions of the underlying expert reports ... at face value without evaluating the merits or quality of the reports." *Id*. at 29 (quotation omitted). Plaintiff contends that "it is not necessary to open the lid and reexamine *underlying*

1    expert reports and opinion, as an equivalent expert, to determine what would be a

2    reasonable settlement between two parties in this case.  The underlying experts were

3    going before a jury, each party would get to cross examine the opposition's expert, and

4    then the jury would make a decision." (ECF No. 171 at 29).  Plaintiff contends that,

5    "[b]ased on his extensive experience, Mr. Pretty was highly qualified to opine on what

6    would constitute a reasonable settlement of the underlying litigation." *Id*.

7         As the Court discussed during the November 13, 2013 motions in limine hearing,

8    expert testimony offering legal conclusions is impermissible when it concerns an

9    ultimate issue which will be decided by the fact-finder. *See Hangarter v. Provident Life*

10   *& Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).  However, an expert may offer a

11   legal opinion about an issue that is ancillary to the ultimate issue in the case. *See id.* at

12   1017.  The jury was asked to consider the reasonableness of the Ambu settlement,

13   which was a fact issue on which Pretty was allowed to testify.  Pretty's opinions

14   regarding LMA's patent infringement case were ancillary to the ultimate issue in this

15   case.  The Court found Pretty's testimony to be sufficiently reliable based on Pretty's

16   knowledge and experience.  To the extent Defendant challenged the correctness of

17   Pretty's underlying assumptions, the Court found that National Union's "recourse is not

18   exclusion of the testimony, but, rather, refutation of it by cross-examination and by the

19   testimony of [its] own expert witnesses." *Humetrix, Inc., v. Gemplus S.C.A.*, 268 F.3d

20   910, 919 (9th Cir. 2001).

21        At the November 13, 2013 motions in limine hearing, the Court stated that, "with

22   respect to National Union's contention that certain testimony by Pretty will be

23   speculative, National Union may object to any specific question or testimony at trial.

24   National Union's motion in limine [related to Pretty] is denied without prejudice to

25   renew at trial with respect to specific testimony." (ECF No. 130 at 29).  In the Motion

26   for New Trial, Defendant does not point to any specific testimony by Pretty to which

27   Defendant objected at trial, so the Court only reviews the motion in limine ruling.  To

28   the extent Defendant moves for a new trial based upon the denial of the motion in

1  limine related to Pretty, the motion is denied.

2               **2.    Michael Warford**

3         Defendant contends that the Court erred in allowing Warford, Plaintiff's

4  corporate representative, to testify that he "receive[d] a recommendation from Mr.

5  Marzen [LMA's attorney in the underlying action] about the $4.75 million settlement,"

6  and LMA followed Marzen's recommendation and "paid the $4.75 million." (Trial Tr.

7  at 785-86, ECF No. 137). Defendant contends that the "only purpose [of the testimony]

8  was to suggest that another professional—without any basis—considered the settlement

9  reasonable." (ECF No. 175 at 10).

10        Warford did not testify that he believed the settlement amount to be reasonable.

11 To the extent such a belief can be inferred from Warford's testimony, Defendant was

12 permitted to cross-examine Warford about the basis for this belief. Defendant also was

13 permitted to cross-examine Marzen at length about Marzen's recommendation that

14 LMA settle the underlying case. During the Final Jury Instructions, the Court instructed

15 the jury regarding the factors to consider when assessing the credibility of a witness and

16 a non-expert's opinion testimony. *See* Final Jury Instruction Nos. 7 & 11, ECF No. 143

17 (Ninth Cir. Model Civ. Jury Instr. No. 1.11 & CACI 223). To the extent Defendant

18 moves for a new trial based upon the Warford's testimony, the motion is denied.

19               **3.    Louis Manger**

20        During the second day of testimony by Louis Manger, National Union's

21 corporate representative, Plaintiff's counsel asked Manger if he "rehearsed [his]

22 testimony" with defense counsel during the break between the first day of Manger's

23 testimony and the second day. (Trial Tr. at 727, ECF No. 137). Defense counsel

24 objected to the question and stated at sidebar, "that type of leading question in front of

25 the jury is so inflammatory and prejudicial to our case that we're asking for a mistrial."

26

27

28

*Id.* The Court sustained the objection and instructed the jury to disregard the question.[8] *Id.* at 729.   During the Final Jury Instructions, the Court instructed the jury that "[q]uestions and objections by lawyers are not evidence," and "[t]estimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered." *See* Final Jury Instruction No. 4, ECF No. 143 (Ninth Cir. Model Civ. Jury Instr. No. 1.7).

Defendant contends that Plaintiff's question "was in clear violation of attorney-client privilege," and "was intentional, flagrant and so highly prejudicial, a mistrial was warranted."   (ECF No. 169 at 31-32).   To the extent Plaintiff's question was objectionable, *cf. United States v. Carrillo*, 16 F.3d 1046, 1050 (9th Cir. 1994) ("Coaching is a proper subject of impeachment in cross-examination.  The prosecutor did not violate [defendant]'s attorney-client privilege by inquiring whether communications occurred [between defendant and his counsel during a break] and raising the inference of coaching."), the Court finds that striking the question and issuing curative instructions were sufficient to cure any error.   *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1270 (9th Cir. 2000) ("There is a strong presumption that the curative instructions given by the district court were followed by the jury....") (citation omitted).  To the extent Defendant moves for a new trial based upon the stricken question to Manger, the motion is denied.

### 4.   Stephen Marzen

Defendant contends that Plaintiff's counsel questioned Marzen improperly by asking Marzen to speculate and opine regarding the reasonableness of the settlement

---

[8]   The Court instructed the jury:

Ladies and gentlemen, the objection to the question is sustained, so I am going to strike the question, and ... you are instructed to disregard the question.  The question was not answered, and so as I told you, questions are not — are not evidence.  A question is just a question.  So I sustained the objection, ... you are instructed to disregard the last question that Mr. Thompson asked.  It has been stricken.

*Id.* at 729.

1   and the state of mind of Defendant's representatives.  (ECF No. 169 at 32-33 (citing

2   Trial Tr. at 90-91, ECF No. 120)).  Defense counsel objected and the Court sustained

3   the objection and struck the testimony.[9]  *Id.*  During the Final Jury Instructions, the

4   Court instructed the jury that "[q]uestions and objections by lawyers are not evidence,"

5   and "[t]estimony that has been excluded or stricken, or that you have been instructed

6   to disregard, is not evidence and must not be considered."  *See* Final Jury Instruction

7   No. 4, ECF No. 143 (Ninth Cir. Model Civ. Jury Instr. No. 1.7).  To the extent

8   Defendant moves for a new trial based upon the questioning of Marzen, the motion is

9   denied.

                        **5.    Bernard Feldman**

11          Defendant contends that the examination of its liability expert, Bernard Feldman

12   "was repeatedly disrupted and distracted by lengthy sidebars."  (ECF No. 169 at 33).

13   During the course of Feldman's testimony on November 19, 2013 and November 20,

14   2013, five sidebars were conducted: one sidebar occurred during his direct examination

15   by Defendant, three sidebars occurred during Plaintiff's cross-examination as a result

---

[9]  The cited testimony is as follows:

| | |
|---|---|
| Q. | Mr. Marzen, from your perspective as defense counsel, did AIG act reasonably in its decision not to pay its share of the settlement? |
| A. | Absolutely not. |
| Q. | And why do you say that? |
| A. | I think, my own feeling from living through this, and having you take me through the documents again, AIG was looking for every excuse not to pay.  If AIG had said, the settlement was reasonable and contributive, that would have been fine.  If AIG said the settlement was not reasonable — |
| Defense: | Judge, I'll object to this, and I'd ask the jury to disregard the last couple statements from this witness. |
| Court: | I'll certainly — the witness answered about what AIG was looking to do.  That seems to be speculative.  And so what I'll do is, I'll strike both the last question and the last answer. |
| Q: | Okay.  I'll phrase my question appropriately, which is, from your perspective as defense counsel, and only your perspective, do you think AIG acted reasonably in how it conducted itself throughout the course of this claim? |
| Defense: | Same objection. |
| Court: | I'll sustain the objection. |

(Trial Tr. at 90-91, ECF No. 120).

of Defendant's objections (including one which occurred after the jury was dismissed), and one occurred during his re-direct examination. *See* Trial Tr. at 596-600, 614-15, 624-35, 658-59, 671-73; ECF Nos. 137, 176. Defendant has not objected to any particular ruling made during the sidebars, and the Court finds that any disruptive effect of the sidebars, three of which were initiated by Defendant during Plaintiff's cross-examination, does not warrant a new trial.

### D.   Closing Argument

Defendant contends that Plaintiff engaged in "improper closing argument" by (1) "misstating the law of the case"; (2) "instructing the jury that litigation conduct of the parties is evidence of bad faith"; and (3) making "blatantly misleading and confusing assertions regarding the relationship and respective obligations of National Union and CNA." (ECF No. 169 at 34). With respect to Defendant's contention regarding litigation conduct of the parties, the Court struck the argument and issued a curative instruction.[10] "There is a strong presumption that the curative instructions given by the

---

[10] The Court stated:

Ladies and gentlemen, before [defense counsel] begins his argument, I am going to direct you to a statement that [Plaintiff's counsel] made in his argument, and I am going to read that statement to you, and ... I am going to strike that statement from the record and instruct you to disregard it.... This is the statement that is stricken from the record and that you are to disregard:

'I submit this to you, when AIG said that LMA and Mr. Marzen were sinister and collusive and all those other horrible words that we heard, they doubled down, and you can't just say stuff like that and not back it up, and they didn't back it up, and if you can't back it up, it backfires on you, and I submit that it is the best evidence that tells you that AIG's conduct is not just unreasonable but malicious and oppressive.'

So you are instructed to disregard that statement. That statement has been stricken from the record. And I have ... one additional jury instruction that relates to this statement that I've stricken from the record:

Arguments, statements, or conduct of counsel in this action being tried before you cannot be used as the basis to support allegations that National Union acted unreasonably and/or should be liable for punitive damages.

So that is the additional instruction.

district court were followed by the jury...."  *Glanzer*, 232 F.3d at 1270 (citation omitted).  With respect to Defendant's other contentions, the Court does not find that the closing argument by Plaintiff's counsel warrants a new trial.

**IV.   Fees and Costs**

Defendant contends that the Court erred in its March 28, 2014 Order ruling on Plaintiff's Motion for Entry of Final Judgment Including Attorneys' Fees, Costs, and Prejudgment Interest.  (ECF No. 169 at 39-41).  For the reasons stated in the Court's March 28, 2014 Order, Defendant's motion is denied.  *See* ECF No. 162 at 5-18.

**V.   Conclusion**

IT IS HEREBY ORDERED that the Motion for New Trial and/or Judgment is DENIED.  (ECF No. 169).

DATED:  July 22, 2014

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge

---

(Trial Tr. at 933-34, ECF No. 149).  In addition, during the Final Jury Instructions, the Court instructed the jury:

> Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls....

> Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

(Final Jury Instruction No. 4, ECF No. 143 (Ninth Cir. Model Civ. Jury Instr. No. 1.7)).

11cv1282-WQH-DHB